The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning all. The first case for argument is 19-1481, Pollitt v. DVA. Mr. Smarto, whenever you're ready. Thank you, Judge. I just wanted to point out, I'm having just a little difficulty hearing you. I heard the other judges perfectly clearly. I just wanted to point that out in case you have any questions. I may have to ask you to repeat. Please. Good morning, Judge. My name is John Smarto. It may have pleased the court I represent Helen Pollitt in these two joint appeals that came up from Administrative Judge Michael T. Rudisill sitting for the Merit System Protection Board. These joint appeals involve a suspension and a termination. I have ten minutes to present my case. I'm going to be as brief and quick as possible. I wanted to first point out that the initial suspension we are dealing with is a whistleblower situation. My client was deemed a whistleblower. She disclosed certain information that was affecting patient care relative to blood gas readings and hemoglobin readings. She was deemed a whistleblower and she was also deemed that the disclosures were legitimate and definitely a legitimate concern to the VA health system in Pittsburgh. Unfortunately- Mr. Smarto, can you hear me? I'm sorry. Yes, I can. Sorry to interrupt, but we're limited in time. It seems like by the time you got to your grave recently, you had distilled your principal argument to the nature of the penalty here. Correct. Under the Douglas factors. Correct. Is that a fair representation? Yes. I just wanted to give a very brief background. We're going to focus primarily on that, Judge. There was an issue of reprisal that was involved in both of these particular appeals. We're prepared to probably concede the fact that there was no reprisal here in either situation, especially with the termination because of the period and passage of time. What we're focusing on is a 22-year employee who was basically fired for absenteeism. She had a very, very fine record in her 22 years at the VA. Unfortunately, at the time she made these initial disclosures in 2012, she unfortunately got into some disputes with her supervisor and she was having issues at work over that three-year period. Eventually she had missed some time in September and October of 2014 that were unexcused. She was suspended 14 days and did not challenge that suspension. Eventually there was an issue in January of 2015 where there was some inclement weather, and she had also recently had surgery. I'm sorry to keep interrupting you, but believe me, we've read the briefs and we understand the facts here. Let me just inquire. It seems like your argument with respect to the Douglas factors comes down to the agency's obligation, in your view, to have affirmatively gone through everything she did in her conduct in 22 years with the exception of this and to give arguments as to why her environment and harassment and the circumstances of her environment caused this change in the last three years. One of my problems is that it doesn't seem to me, based on what we have of the records, that she was really offering this, either as a defense or as a reason. It seems like you're sort of shifting the burden and saying, well, the agency has an affirmative obligation to look at all that stuff, not that she and her are not making the case for that stuff, in her view. The only thing I can say with regard to that, we're not trying to shift the burden. We can't change the process. We can't do that. However, in taking her entire employment history in totality in 22 years, it's decidedly official that she never looked at her entire work history. She only focused on herself. For timing, Mr. Smarto has 10 minutes and 44 seconds remaining in his total time, including rebuttal. Okay. So, Mr. Smarto, do you recall where we left off? I think you were responding, you said there's no burden that she had, but responding to what burden there was for the agency to investigate matters that she did not call to their attention. Well, first of all, I think she did briefly, and I think the deciding official, Dr. McPherson, did reference that she was having some issues with her supervisor. He didn't know the specifics of it, but he said he had an inkling that there was an issue there. That was never looked at. I believe when you look at somebody's entire work history over those 22 years, if Douglas Factor IV means anything, you just can't look at length of service. You have to look at her performance, her job performance, how she got along with her fellow employees, what kind of an employee she was over that period of time. Dr. McPherson limited his inquiry to three years, which we will concede were three not very good years for this person. Mr. Smarto? Yes. So, as I understand your argument, you're saying that because the deciding official said that he had an inkling there was trouble because of the nature of her reply. She was, I guess, talking about how, you know, I don't remember what it was exactly, but he said something about the nature of her reply suggested to him, gave him an inkling that there could be, that she didn't have a good relationship with her supervisor or something. How, doesn't she have some, shouldn't she have to really bear that out and say, I mean, now on appeal you're urging a harassing work environment, but none of that was introduced or developed by her in her reply. How can she argue this for the first time on appeal? I don't know how, if we're arguing, we put that in there because I believe when she did make her oral reply to Dr. McPherson, he was, I think, savvy enough to understand that there was some conflict and some issue there. They're having a conversation. She's making a reply. Did he know the actual specifics? No, I can't stand here and tell you of record that he knew the actual specifics. However, in the context of her employment, when you have an issue like this where she had absenteeism over basically a two-month period out of 22 years, and you're making an evaluation, and he even stated himself on the record that he did not see a pattern here prior to this. Perhaps the reason lies elsewhere. There may be something going on in the respiratory therapy department with not only her but maybe others. Mr. Smartall, this is Judge Reynolds. Hello, Judge. You brought up the issue of a pattern, and on three dates in September 2014 and then nine dates in October 2014, she failed to report to work and was found to not be in improved status. I don't understand why she failed to go to work then. She just did not show up, right? That's all I can tell you, Your Honor. And there's no reason? No, she didn't grieve after her union, and she never made an appeal to the MSPB on that issue. Why isn't this part of a pattern then? We have a worker, and you're holding her record up as exemplary and as rational as to why she should not have been terminated, but we have a number of periods of times where she's just AWOL, and it turns out that her job is working with a respiratory therapist, and she missed the event capture administrative task that she had in February 1 through March 12. All right. I don't – even if somebody has an exemplary record, when you're involved in this type of activity, the responsibility that she has and all, you know, it could take just one day to undo everything in this type of situation. Wouldn't you agree? I don't know about one day. Let me just address two points you've made here. How about several days? How about 118 hours? It was around 113 hours, correct, in those days. We're not justifying the fact that that was a good thing. Obviously, the absenteeism is there. Those are the facts. There's nothing we can dispute in that regard. You mentioned that event capture. That's not testing. You mentioned that as being testing. That's just the computer input of the testing that you did in that particular day. You do that at the end of your shift, and you just input this information. It's pretty much clerical work, administrative work. It has nothing to do with patient care. All right. In addition to that, I'm sorry. And she doesn't perform it for a six-week period. And as I could tell from the record, the only thing she said without explanation was this was a security breach. But it's a pretty serious thing, is it not, if an employee refuses to perform a duty that's assigned for a six-week period, without explanation. Well, it is serious. It is something, though, if you look at our appendix, in particular appendix page 768, when this came to be a requirement for respiratory therapists in 2002, if you did not perform this event capture, it would never be part of a serious disciplinary action. It would be maybe written counseling or verbal or written counseling. Even Dr. McPherson himself said she would never have been terminated had this just been a singular issue. The issue is, and he stated it specifically, she was fired for absenteeism. And that's really what our focus is here. If it was just event capture, we probably wouldn't be talking here today. Well, Counsel, this is Doug Gerano. I question what you just said, that this is our focus, because it seems to me that your argument up to this point in time is asking us to re-weigh facts. And we can't do that. Well, what exactly is your legal argument here? Well, I think we focused, again, as the judge said earlier, we're focusing primarily on the termination and whether or not when she had her oral reply and then eventually the evaluation by Dr. McPherson, the deciding official, whether or not the Douglas factors were actually employed here or even considered or whether this was a pro forma performance here just to fire the girl. And I know that there was another official, the proposing official, before Dr. McPherson who just filled out this Douglas factor checklist, didn't really look at anything or consider anything and sent it up to Dr. McPherson. And the only thing that was considered by him, which was fine, was her 22 years. But I don't believe that everything was looked at in the context of a 22-year period. Certainly, absenteeism is a problem. We can see that in our brief. It affects efficiency of service. Our position is that maybe there was some mitigation that could have been had here. In addition to that, considering her length of service and her record overall, she could have perhaps, there could have been another form of discipline short of termination. Among the things that the deciding official said was that rehabilitation was not a realistic option, he thought or she thought, because the prior discipline didn't work. That's a pretty standard and well-accepted argument in the context of Douglas factors, is it not? Well, it's a standard. Now, she was suspended for absenteeism one time, and that was for 14 days. This particular issue on the second AWOL issue, which was one day, there was an actual dispute over whether or not she was actually AWOL that day. She asked to be relieved of her tour that day. She had an issue, she fell, there wasn't clement weather. This is Joe Stoll. We're aware of those facts, but here you've got a finding that it was AWOL, and that's not disputed on appeal. So I think that that's not something that we can reweigh. Isn't the standard here just whether the penalty of removal was within a range of reasonableness? Isn't that what we're supposed to be looking at? Yes, it is. Yes. Okay. So why isn't it within the range of reasonableness? Our position is that- Go ahead. I'm sorry. I'm sorry. I don't really see that argument in your briefing. I think your argument is more that there are certain factors that should have been more developed. Go ahead. We believe there are certain factors that should have been more developed, which hopefully we believe led to something less than termination. We don't believe it was reasonable because of her length of service and her record. You're well into- I think I heard the bell. Michael, did we hear the bell a few minutes ago? Yes. Yes, you did, Your Honor. Okay. Why don't we turn to the other side, and we'll retain your rebuttal time. Okay. Thank you. Thank you. Ms. Rose, are you available? Are you here? Thank you, Your Honor. Can you all hear me? Yes. Yes. Thank you. May it please the Court, removal here was a proper penalty, and Ms. Pollitt has not shown any error in the MSPB's decision. Here, the deciding official properly considered the relevant factors. He considered her length of service. He acknowledged that he did not have a concern about her ability to do her job if she were to show up, but his concern was that she had shown a pattern of not showing up, of being AWOL, and that he was concerned about whether or not she would show up to her job. And he also noted that AWOL was particularly serious because of her position and that it affected patient care. In addition, to the extent that Ms. Pollitt is contending that additional investigations should have taken place into factors that she considered mitigating, the burden was on her to raise those arguments and present that evidence, as this Court has recognized. Given that there was no error here and that Ms. Pollitt is asking the Court to reweigh the evidence, we ask that the decision be affirmed, and if the Court has any questions, I would be happy to answer those. Let me ask you about going back into the facts that your friend was talking about. Clearly, there's nobody that's disputing that in 2014 she was absent on AWOL for a substantial amount of time and she got a 14-day suspension, which I assume is what the agency concluded was the right penalty. All that happened after that was one day, and you're right. One day, the agency is right that she was AWOL, but it wasn't a clear cut, they just don't know why she just didn't show up. There was a bit of an explanation, a disagreement. You win on that. But it was one day, and it seems like a different kind of extraordinary circumstance. So why, under those circumstances, does just the fact that she was AWOL for 2014, where she was punished, this one day where there was some dispute on what the circumstances were, it seems a little unique. Why is that enough to trigger a removal? Thank you, Your Honor. I think that there are two things here. First, as the Court recognized previously, that AWOL was not the only charge. So while the failure to follow supervisory instructions was not considered to be as serious of a charge, it was something that was charged and proven. But as for the one day of AWOL, the facts here about whether there was a disagreement and whether or not she was requesting sick leave for appropriate reasons were mostly only developed at the MSPB's hearing. So Ms. Pollitt was given an opportunity after she was told that she could not take sick leave for inclement weather to change her leave request to annual leave. And not only did she not do that, but she did not create any kind of record at that time that documented any dispute with the decision that she was not permitted to take sick leave. And she did not raise that to the deciding official. I haven't been a bureaucrat in a long time. If she had said, okay, put me down for eight hours of annual leave, would there have been no blemish or no mark on her record with respect to this AWOL stuff? With respect to the AWOL charge, the one day charge that she was removed, that's my understanding of the record is that she had the opportunity to correct it and she did not do that. And because she did not do that, she was marked AWOL if she had taken annual leave as she had been invited to do by her... Well, I think the record is a little bit unclear as to whether Mr. Schweikert was her supervisor, but he did direct her that she could change it to annual leave. There would be no AWOL charge because she would have been in a proper leave status. This is Judge Wayne. What does that do to the argument that she was in a position that required her to be there and it involved the safety of the patients at some point? What is it better than if she could have just simply said, I'm going to take annual leave, and those eight days would have been excused? Well, I think that it doesn't really reflect on that except that she did not... She was AWOL in a position that impacts patient care, but annual leave is permitted for things like when there's... There are times when annual leave can be approved on short notice. I'm not sure what the agency's policies here are, but there can be times when you can basically ask for annual leave at the beginning of your shift because of your inability to get into work. But, again, she was invited to take that leave and did not do so. And you're just talking about the January 29th AWOL, the one day. You're not talking about the 2014 substantial period of AWOL, correct? That's right. As Mr. Smarto indicated, there was no challenge to those charges and there's really no development in the record as to why she was AWOL so frequently in September and October of 2014, but within just a few weeks of returning from her suspension, she was AWOL again. Are there any further questions from the court? Well, let me just ask you about the event capture because Mr. Smarto's...one of his responses on that was that, at least some time previously, employees were easily readily forgiven for not doing it. And under a normal Douglas factor analysis, comparable penalties for the same conduct is a factor that is evaluated. Was that aspect developed in this case, saying that in other cases employees have refused, as she did, to do this event capture duty and were not disciplined at all? No, that was not developed. And, again, here I think that it's important to remember that the deciding official and then the MSPB were looking at both charges. And what the deciding official explained is that he considered to be the AWOL, particularly as she had shown past AWOL behavior, to be more serious. But he also did consider the event capture to be important because, as in his testimony at Appendix 1296, he says, the absenteeism was the most important factor, but at the same time I could see that she was behaving in a way that wasn't compliant with the typical rules of the ICU of her department. And so, again, while this may not, if the failure to follow supervisory instructions regarding event capture was the only charge, I think that there's no disagreement here that the agency likely would not have recommended removal. It was the culmination of the charges that led to the recommendation and the ultimate removal. Thank you. Let me ask my colleagues if they have any further questions. No further questions for me. Thank you, Your Honor. Thank you. Mr. Smarto, you're up again for your rebuttal time. I'm sorry. It appears Mr. Smarto may have muted himself. I have to unmute him one second here, Your Honor. Oh, okay. Can everyone hear me now? Yes. Okay, thank you. Just briefly, I want to go back very, very quickly to this event capture. Even the counsel for this event, VA at the hearing conceded that event capture was not a motivating factor in this termination, that it primarily dealt with, well, absenteeism wasn't the reason. Pointing out that January 29th AWOL, which triggered the termination, clearly that she could have, and they asked her to input in their system, which is how they call off work. They get on the computer and they put it in. They could take annual leave or sick leave or whatever they have coming to them. She was actually given the day. They were worried about her safety. You can take the day, but you can't put him for sick leave. If you put him for annual leave, you're good. She never did that for some reason, and I don't have an explanation to the court. I can't give you an explanation as to why she did not do that or that she just forgot and thought it wasn't a problem. That's the only thing I can offer. She had an opportunity to make this offer in connection with the proceedings in this case. Is that what you told the deciding official, that she was just confused, she thought it would automatically be annual leave, was what you just told us, what she explained to the people at the agency? Right. I believe she thought it was just going to be annual leave, but she evidently had to physically put in for this. I'm asking what she thought. I'm asking what she explained to the agency as to why this happened. That particular day, what she explained to the agency, the overall reason why she wasn't coming in or why she didn't put him for annual leave? Why she didn't put him for annual leave. I believe the record reflects that she told Dr. McPherson in her oral reply that she thought it was taken care of. What does the record say that? I don't. I thought I read that, Judge. I have the appendix up in front of me now. I don't know whether she said that to him. I mean, in her testimony or whether he said that. And I don't know if I have it in my brief. I believe she just thought it was going to happen. She didn't have to do it. And unfortunately, her second-tier supervisor, Schweikert, I believe advised her that she had to physically do this and put it in on her own, and she did not do that. You might want to look at page JA736. That might be what you're looking for. 736. Right. Okay. That is actually the memo to... Go ahead. I'm sorry? Go ahead. It looks like that is the memo relative to the trigger, the final disciplinary course for her. Okay. I had the wrong thing. Somewhere in here you think there's some testimony where she says why she didn't change the time to a different category. I seem to recall that, Your Honor. I don't have recall that now I have the appendix here in front of me, and I'm not going to be able in my five minutes or less than five minutes to be able to get that to you. Being in the hearing, I believe that's what she thought. And certainly it was offered to her, but she was... I'm not going to deny that she was told that she physically had to make this particular change to annual leave from sick leave, and she did not do that. If she would have done that, she probably would not have been terminated, at least at that particular point in time. So it comes down to that. And, again, she was initially told to take the day off, but her direct supervisor told the second-tier supervisor to call her back and tell her that she characterized it as sick leave for inclement weather, and she can't do it. And even though it's been done and has been done, the testimony of the supervisor said that the employees try to skirt the weather conditions by using sick leave and annual leave. We know what's going on, but we sort of don't do anything about it. But that's all I can offer at that point. And, again, yes, she could have changed it. Okay. Final comment, because I think the time has expired. Final statement. Oh, from me? I'm sorry. Yes, for you. Yes. Okay. I apologize. Just not much more to add other than we have a 22-year employee that was terminated for 12 days of absences, unauthorized absences, never had a disciplinary problem prior to 2012. She trained people. She was receiving awards throughout her career. We believe that this was reason one of the circumstances, that there was mitigating factors, and also that some other form of discipline short of termination could have very easily been meted out to her. And I thank everybody for their time, and I hope everybody's well and stays safe. Thank you. Same to you all. Thank both sides, and the case is submitted. Okay. Thanks.